[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, Thomas M. Daniel and Maria S. Daniel, from a decision of the defendant, the Zoning Commission of the city of Norwalk (Commission). The Commission granted a special permit to the defendant, Cedar West, Inc. (Cedar West), to use its premises on North Taylor Avenue, Norwalk, as a "conservation development." Cedar West proposed to construct ten single-family dwellings on its property and to preserve fifty per cent of the land for open space as a conservation area.[1]
The subject premises consist of approximately four acres in the A Residential zone. This zone permits, as a matter of right, one dwelling unit on a minimum of 12,500 square feet. Approximately one-quarter of the subject premises belonging to CT Page 13502 Cedar West consists of designated wetlands. The property is presently developed with three single family dwellings.
The A Residential zone also permits a "conservation development." In this zone, in contrast to a standard subdivision, the dwellings are clustered and fifty per cent of the land is reserved as open space to be deeded in perpetuity to the city of Norwalk, or to a conservation organization.
According to section 118-410 of the Norwalk Building Zone Regulations (the regulations), a conservation development requires a "special permit." Special permits are authorized by section 118-1450 if the Commission determines that the proposed use or structure is in accord with the general purpose and intent of the regulations, and promotes the public health, safety and welfare. In addition, the Commission must consider certain other factors such as the location, nature and density of the proposed use or structure in relation to the surrounding area and neighborhood; the impact on traffic circulation and congestion; and whether the proposed use has adequate open space and promotes the conservation of wetlands and watercourses.
In addition to the above generalized requirements, a conservation development must also meet a number of specific conditions or requirements: (1) the proposed use must assure the conservation of land and be used for park and recreational purposes; (2) the project must preserve streams and ponds and avoid flooding and erosion; (3) it must preserve wetlands and other areas having conservation values; (4) the project must consist of single-family detached dwellings in single ownership only; (5) there shall be no building within twenty feet of another building in the A Residence zone or within forty feet of a designated inland wetland or watercourse or a tidal wetland; (6) to the extent possible, use must be made of public sewer and water; and (7) the conservation land is to be transferred to the city of Norwalk, a neighborhood association, or to some other similar organization in order to maintain the conservation land in perpetuity.
The Commission held a public hearing on Cedar West's application on July 19, 1995. On August 16, 1995, the commission unanimously granted the request for a special permit to use the subject land as a conservation development with ten units. The decision stated that the proposed use complied with the regulations regarding special permits and conservation CT Page 13503 developments. The plaintiffs appealed the decision of the Commission to this court in accordance with General Statutes § 8-8 (b). The plaintiffs allege in their revised appeal dated October 25, 1995, that they are aggrieved by the Commission's approval of the Cedar West application because such approval violates wetland setback requirements, constitutes a change of use of public parkland, and fails to provide proper soil and erosion control measures.[2]
General Statutes § 8-8 (a) (2) (b) provides that "any person aggrieved by any decision of a board may take an appeal" to this court. Proof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Northeast Parking, Inc. v.Planning Zoning Commission, 47 Conn. App. 284, 287,___ A.2d ___ (1997). An "aggrieved person" in defined in § 8-8 (a) (1) as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
At a hearing before this court on August 6, 1997, the Daniels demonstrated that they owned property at 167 North Taylor Avenue which is directly across the street from the subject premises and within 50 feet thereof. The defendants agreed that the plaintiffs were statutorily aggrieved. The court therefore has subject matter jurisdiction over this appeal.
The plaintiffs in their brief raise three separate issues concerning the Commission's decision. The first claim involves the proposed use by Cedar West of a city-owned dirt track or strip of land known as Twin Ledge Road to provide access to a number of the proposed dwellings. According to the plaintiffs, this track or strip is part of a public park located on the north side of the subject premises. The road is to be upgraded to municipal standards which will require the filling of approximately 1,000 square feet of wetlands. The plaintiffs contend that the use of this track or strip of land as a roadway by Cedar West will damage wetlands and a watercourse.
The plaintiffs further assert that Cedar West's plans call for three biofilters to be installed in order to compensate for the loss of wetlands.[3] They claim that two of the three biofilters violate a setback requirement that they be located at least forty feet from any dwelling. Thus, the plaintiffs claim that the approval of the special permit was illegal and an abuse of the Commission's discretion. CT Page 13504
The second reason for the plaintiffs' appeal is that Cedar West, in connection with its proposed use of the so-called dirt track located in Oak Hills Park, plans to cut into an adjoining knoll. The planned cut, according to the plaintiffs, will reduce the knoll from 120 feet to 107 feet and is too steep. The plaintiffs claim that such planned cut violates the Soil Erosion and Sedimentation Control Regulations, which provide that cut and fill slopes shall not be steeper than 2 to 1 (2 horizontally and 1 vertically). The proposed cut is alleged to be four times steeper than permitted. The plaintiffs also assert that the proposal fails to provide a retaining wall to hold up the slope, and lacks an adequate erosion control and stabilization plan.
The plaintiffs' third contention is that Cedar West's proposed use of the fifty foot wide dirt track or strip of land belonging to the city of Norwalk violates certain deed restrictions imposed on this tract of land by a Dedication Agreement with the State of Connecticut dated August 24, 1967. The plaintiffs claim that such restrictions require that this strip of land or roadway be maintained exclusively for recreational, conservation or parkland use, thus prohibiting such parcel from being used for roadway access to Cedar West's property.
The standard of review by this court in connection with the granting of a special permit or exception was set forth by the Appellate Court in CRRA v. Planning Zoning Commission,46 Conn. App. 566, 569-70, 700 A.2d 67 (1997). "The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied . . . .
"It is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are CT Page 13505 satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Citations omitted; internal quotation marks omitted).
The first claim of the plaintiffs concerns the impact on the wetlands. Cedar West's proposal was accompanied by a Planting and Mitigation Plan and an Environmental Assessment by Chase Associates.[4] The application received the approval of the Conservation Commission; see footnote 2; the local departments of Public Works (DPW), Parks Recreation, Health, Traffic, and Fire, as well as the Commission's Plan Review Committee. The environmental assessment stated that the proposal "will not result in adverse impact to the wetland system. . . . the project also proposes the long-term preservation of over 50% of the site as a conservation area which includes the wetland system and biofilters."
Moreover, the requirement in section 118-410 (c) (2) of the regulations that a building cannot be located within forty feet of a "designated inland wetland or watercourse," does not refer specifically to biofilters. The Commission construed the distance requirement as pertaining to a building and a designated wetland, that is, a wetland designated as such by the Conservation Commission. The biofilters were not so designated. The project engineer advised the Commission that the 40 foot setback "applies to the buildings and we have maintained all of the buildings of the required 40 foot, feet away from the property lines and as Conservation or as the regulations require, from the wetlands as well."
Also, the evidence at the hearing described the primary purpose of the biofilters as an aid to proper stormwater management. They are used to "trap sediments and pollutants, reduce flow velocity, and prevent erosion and sedimentation of the wetlands." The Commission construed its regulations as not requiring forty feet between a building and a biofilter, but only between a building and a designated wetland. The construction placed upon a statute or regulation by the agency responsible for its enforcement and administration is entitled to great deference. Griffin Hospital v. Commission on Hospitals HealthCare, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, CT Page 13506479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986).
The second issue presented by the plaintiffs involves the grading of a certain knoll on the north side of the subject premises. This is a part of the proposed widening and development of the 50 foot strip into a road. The road construction received DPW and Engineering approval as conforming to city standards. The project engineer submitted some documentation to the effect that the knoll in question consisted primarily of rock and not of soil subject to erosion. Cedar West also submitted to the Commission a soil report from a soil scientist and a soil and erosion control plan for stabilizing the knoll. Moreover, one of the conditions imposed by the Commission in approving the project was that soil erosion controls had to be employed prior to construction. Thus, the Commission had sufficient evidence to justify its approval of a 200% grading of the knoll, whereas the plaintiffs did not present any expert testimony to the contrary.
The plaintiffs also contend that Cedar West should not be permitted to use the 50 foot strip as a road because it must be restricted to parkland use. Cedar West presented evidence that this strip is referred to in the Norwalk Land Records as Twin Ledge Road, a public road. The purpose of this road is to provide access from North Taylor Road on the east to the adjacent Oak Hills Park and golf course. The defendant also indicated language, in the 1989 deed to Cedar West from its predecessor in title, that refers to this strip as "though the same were a public highway." Moreover, the Commission's Plan Review Committee referred to the 50 foot wide strip as a public road, not part of a park. Thus, the Commission had ample evidence that it was dealing with a public road and not a parkland.
In summary, a conservation development is a permitted use in the zone where the subject property is located, provided special permit approval is granted by the Commission. Certain standards are established for the granting of special permits, and the defendant Commission concluded that the applicant, Cedar West, had complied with these special permit standards. "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Citations omitted.)Felsman v. Zoning Commission, 31 Conn. App. 674, 678,626 A.2d 825 (1993). "The function of a special permit is to allow property owners to use their property as expressly permitted by zoning regulations, subject only to the protection of public health, safety, convenience, and surrounding property CT Page 13507 values. . . . There is no evidence in the record before the zoning commission that the public health, the public's safety or convenience, or property values in the area as a whole would be detrimentally affected by the plan of the plaintiff submitted to the zoning commission." (Citation omitted.) Irwin v. Planning Zoning Commission, 45 Conn. App. 89, 101, 694 A.2d 809 (1997).
It is axiomatic that in an administrative appeal, a plaintiff has the burden of proving "that substantial evidence does not exist in the record as a whole to support the agency's decision."Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993). For the reasons stated above, the plaintiffs in the present case have not sustained their burden. Accordingly, the decision of the defendant Commission is affirmed, and the appeal of the plaintiffs is dismissed. Costs are to be taxed by the office of the chief clerk.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of December, 1997.
William B. Lewis, Judge