[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 9968
The plaintiffs, R R Pool Patio, Inc., Mitchell Ross, David Ross and Philip Ross, appeal from the decision of the defendant, zoning board of appeals of the town of Ridgefield (board), sustaining the planning director's (third) denial of a site plan application for outdoor display and storage.
The following facts are adopted from the decision in R R Pool Patio, Inc. v. Zoning Board of Appeals, 60 Conn. App. 82, 758 A.2d 462
(2000), rev'd on other grounds, 257 Conn. 456, 467-68, ___ A.2d ___ (2001). The plaintiffs' property is located at 975 Ethan Allen Highway in Ridgefield. The property is located in a B-2 zone in which retail uses are not permitted under the Ridgefield zoning regulations. In July, 1990, Richard Amatulli, a tenant of the property at the time, obtained a site plan approval to conduct a wholesale oriental rug operation on the property.
On November 5, 1990, the board granted Amatulli's application for a variance to conduct retail sales on the property. The variance provided: "[t]his action permits wholesale and retail sales to be from the premises, unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art."
In 1993, the then owners of the property applied for a variance to remove the restrictions as to the types of goods to be sold and to allow full retail use of the property. This application was denied by the board and no appeal was taken by the owners.
On July 2, 1993, the owners, on behalf of their new tenant, R R Pool Patio, filed an application for site plan approval with the Ridgefield planning director proposing the use of the property for warehouse, office and retail sale of fine outdoor furniture. This application was denied. One of the reasons given for the denial was that the merchandise that the tenants were planning to sell was not the "fine furniture" contemplated by the board in its decision on the Amatulli variance. The owners and the plaintiffs appealed the decision to the board, who sustained the planning director's decision.
On February 24, 1994, the owners of the property and the plaintiffs appealed to the Superior Court, alleging that the board's decision as to the site plan was arbitrary, illegal, and an abuse of discretion. The trial court dismissed the case for lack of standing on the ground that the property owners were not the applicants for the site plan approval. CT Page 9969 The property owners and the plaintiffs then appealed the case to the Appellate Court. While that was pending, the owners conveyed titled of the property to the plaintiffs. Upon review, the Appellate Court reversed the judgment of the trial court and remanded the case for a determination on the merits. The trial court sustained the appeal and concluded that the record contained no evidence to support the board's conclusion that the furniture at issue was not the type of "fine furniture" contemplated by the Amatulli variance.
On July 27, 1995, the plaintiffs applied to the planning director for a second site plan approval for the retail and wholesale sales of oriental rugs, fine furniture and art. The planning director approved the plan subject to the condition that the limited retail sales were exactly as permitted and described in the grant of the Amatulli variance and further defined in the board's decision denying the first application for site plan approval.
In September, 1995, the plaintiffs began retail sales of furniture on the property. Soon after, the Ridgefield zoning enforcement officer issued a cease and desist order ordering the plaintiffs to remedy or discontinue conducting retail sales in a B-2 zone, retail sales not allowed under the Amatulli variance, and retail sales not presented during the site plan process and sales that specifically violate the conditions of the plaintiffs' site plan approval.
On January 5, 1996, the plaintiffs appealed the cease and desist order to the board and the board upheld the issuance of the order. The board stated the plaintiffs had "applied for site plan approval for one use, and after receiving it . . . put the property to another use."
On May 2, 1996, the plaintiffs appealed to the Superior Court. The plaintiffs asserted that the board's decision was arbitrary and illegal in that the Amatulli variance ran with the land and the board could not modify it, the term fine furniture was vague and involved a matter of personal taste, and the plaintiffs were denied due process because they were not informed which items did not constitute fine furniture. The trial court upheld the board's decision concluding that the board's reason for sustaining the order was reasonably supported by the record.
The Appellate Court then granted the plaintiffs' motion to take judicial notice of the site plan case and concluded that the trial court had determined that the Amatulli variance could not be construed to limit the kind of furniture sold on the property. Because the board had failed to appeal from the trial court's judgment in the site plan case, the Appellate Court concluded that the board was precluded under the doctrine of collateral estoppel from asserting that "fine furniture" as it CT Page 9970 appeared in the Amatulli variance, meant something finer than ordinary furniture. The Appellate Court reversed the trial court's judgment, concluding that the plaintiffs' use of the property conformed to the Amatulli variance as defined by the trial court.
The Supreme Court then heard the case and reversed and remanded it back to the Appellate Court, stating that the Appellate Court improperly applied the doctrine of collateral estoppel. R R Pool Patio, Inc. v.Zoning Board of Appeals, 257 Conn. 456, 475, ___ A.2d ___ (2001). The Supreme Court stated that because the meaning of "fine furniture" was neither litigated by the parties nor decided by the trial court in the site plan case, the trial court could not render final judgment on an issue that would preclude the board, under the doctrine of collateral estoppel, from asserting that the plaintiffs' actual use complied with its site plan application to sell fine furniture in the cease and desist case. Id.
On December 28, 1998, the plaintiffs filed a third application for site plan approval of specific products to be sold and specific areas for outside display. (ROR, Item SSS, pp. 867-73.) On February 17, 1999, the planning director denied the application. (ROR, Item D, pp. 13-14.) On February 25, 1999, the plaintiffs filed an appeal to the board and the board upheld the decision of the planning director. (ROR, Items A, pp. 8-9; B, p. 10; 1, pp. 1-7.) The plaintiffs now appeal this decision to the Superior Court.
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545
(1989).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
In the present appeal, the plaintiffs are the owners of the property and have submitted a warranty deed proving ownership. (Plaintiffs' Exhibit 2.) The court finds that the plaintiffs are aggrieved and entitled to bring this appeal. CT Page 9971
Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections 8-8 (f) and (g)] of this section within fifteen days from the date the notice of the decision was published as required by the general statutes." Subsection (e), now subsection (f), further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and leaving a true and attested copy with the clerk of the municipality."
The record contains an affidavit of publication, attesting that notice of the board's decision was published on July 15, 1999, in the Ridgefield Press newspaper. (ROR, Item NN, p. 86.) On July 22, 1999, this appeal was commenced by service of process on the chairman of the zoning board of appeals of Ridgefield and on the Ridgefield town clerk. Accordingly, the court may find that this appeal was commenced in a timely manner by service of process upon the proper parties.
"The Ridgefield planning director is charged with the authority, pursuant to the town's zoning regulations, to grant or deny site plan applications. An aggrieved party may appeal the director's decision to the board, which, in turn, reviews the planning director's decision de novo. . . . It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. . . . The board is vested with liberal discretion in conducting hearings. . . . Its power with respect to site plan applications decisions, however, is constrained by statute. A site plan may be modified or denied only if it fails to comply with the requirements already set forth in the zoning or inland wetlands regulations. . . ." (Citations omitted; internal quotation marks omitted.) R R Pool Patio, Inc. v. Zoning Board of Appeals,257 Conn. 456, 467-68, ___ A.2d ___ (2001). "If the application conforms to the zoning regulations, the board cannot deny the application for subjective reasons that bear no relationship to zoning regulations. . . . If the site plan is either denied or modified, the board is required under § 8-3 (g) to set forth the reasons for its decision." (Citations omitted.) Id., 469.
"An adverse decision by the board may be appealed to the Superior Court under General Statutes § 8-8. . . . The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal. . . . Where a zoning agency has stated its reasons for its actions, the court should determine only CT Page 9972 whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations. . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Citations omitted; internal quotation marks omitted.) Id., 469-70.
As previously noted, the board ultimately denied the plaintiffs' third site plan application. The board found that retail use is not permitted in a B-2 zone unless it is a valid nonconforming use or permitted by variance, that the variance granted to Amatulli does not grant full retail sales or outdoor display, that a site plan is required for a change in use, that to approve the site plan would require that the board act illegally in reversing its earlier decisions in denying variances for the same full retail use, that it is not within the purview of the zoning board of appeals to effectively change the zone of the premises by extending the limited relief granted by variance to Amatulli to allow full retail operation, and that there was no discrimination, selective enforcement or bias on the part of the zoning officials. (ROR, Item 1, pp. 4-7.)
The plaintiffs appeal on the basis that the board acted illegally, arbitrarily, and in abuse of its discretion, in various ways, by sustaining the planning director's decision to deny the site plan application. The plaintiffs have briefed the following grounds.
A. Whether the zoning board of appeals lacked jurisdiction because ofdefective legal notice, thereby rendering its decision void.
The plaintiffs argue that the defendant failed to publish legal notice and to personally notify them of the June 14, 1999 meeting.[1] This meeting was a special meeting, limited to questions about exhibits presented at the previous meeting. (ROR, Items UU, p. 131, VV, p. 132; EEE, pp. 675-77; FFF, p. 678.) "All municipal land use agencies are public agencies for purposes of the Freedom of Information Act." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 21.2, p. 447. Pursuant to General Statutes § 1-225
(d)[2], the defendant was only required to file a notice with the time and place of the special meeting in the office of the clerk of the municipality. See also R. Fuller, supra, p. 448. The record indicates that the board submitted a notice of the time and place of the meeting to the town clerk on June 9, 1999. (ROR, Item JJ, p. 80.) Accordingly, there is no defective legal notice.
We turn, next, to the plaintiffs' claims that they were not personally CT Page 9973 notified of the meeting. "The purpose of a personal notice statute is to give actual notice to [the person entitled to notice]. . . . Therefore, if a person has actual notice of a hearing, the failure to give mailed notice does not frustrate the purpose of the notice provision. . . ." (Brackets in original.) Delfino v. Planning Zoning Commission,30 Conn. App. 454, 459, 620 A.2d 836 (1993). Lack of personal notice may be waived. Lauer v. Zoning Commission, 220 Conn. 455, 462, 600 A.2d 310
(1992); see also Fanning v. New Haven Zoning Board of Appeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 327501 (March 7, 1994, Flanagan, J.); Kobyluck v. Town of Montville, Superior Court, judicial district of New London at Norwich, Docket No. 119333 (November 24, 2000, Purtill, J.T.R.) First, the plaintiffs cite no statutory authority which grants them the right to personal notice. Moreover, even if the plaintiffs had any statutory right to personal notice they waived that right because they appeared and spoke at the meeting. (ROR, Item FFF, p. 678.) Accordingly, it is found that the zoning board of appeal's decision was not void because of defective legal notice and, therefore, the plaintiffs' appeal cannot be sustained on this ground.
B. Whether the trial court's decision in the first site plan applicationis binding because of res judicata and collateral estoppel
The plaintiffs assert that both the first site plan case and the present appeal have identical facts relating to the interpretation of the Amatulli variance and the plaintiffs' use of the property to sell furniture at retail with outdoor display and storage. They argue that all elements of collateral estoppel and res judicata are present, thereby making the decision of the court, Stodolink, J., in the first site plan appeal, binding. They contend that the first site plan appeal identified the same issues of whether the variance limited sales to a certain kind of furniture and whether the planning director construed the variance correctly.
"Res judicata, or claim preclusion, is . . . a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them upon the same claim." Dowling v. Finley Associates, Inc., 248 Conn. 364, 373-74,727 A.2d 1245 (1999). In contrast, "[c]ollateral estoppel, or issue preclusion is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is actually litigated if it is properly CT Page 9974 raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis omitted; internal quotation marks omitted.) R R Pool Patio,Inc. v. Zoning Board of Appeals, supra, 257 Conn. 466.
The claims and issues in this appeal are not the same as those decided by Judge Stodolink in the first site plan appeal. In that case, Judge Stodolink sustained the plaintiffs' appeal from the denial of their site plan application. R R Pool Patio, Inc. v. Zoning Board of Appeals, Superior Court, judicial district of Danbury, Docket No. 316152 (October 26, 1998, Stodolink, J.) That site plan application, however, was for the same use as had been previously granted to Amatulli with outdoor display if it was permitted but with no outdoor display if it had not been permitted previously. That application sought warehouse, office and retail sale of fine furniture. (ROR, Item KKK(n), pp. 794-95.) The plaintiffs' present site plan application, however, requests something totally different. It specifically seeks the outdoor display of merchandise. (ROR, Item SSS, pp. 867-73.) Contrary to what the plaintiffs contend, the court finds that Judge Stodolink never rendered a judgment on whether outdoor display is allowed in a B-2 zone. (ROR, Item F, pp. 17-45.)
The record evidence supports the conclusion that res judicata and collateral estoppel do not apply to the present appeal. Accordingly, the plaintiffs' appeal cannot be sustained on this ground.
C. Whether the ZBA's interpretation of the variance was unreasonable,arbitrary. illegal and in conflict with Judge Stodolink's decision
The plaintiffs contend Judge Stodolink interpreted the language of the variance to allow the sale of the plaintiffs' furniture, the defendant and the regulations do not define furniture, the variance lacks any guidelines or objective standards to enable a person to know what kind of furniture could be sold on the premises and the language of the variance permits furniture to be sold from anywhere on the premises.
The plaintiffs assert that Judge Stodolink's decision interpreted the Amatulli variance to allow the sale of their furniture. Although that decision sustained the plaintiffs' appeal, the court did not hold that the plaintiffs' furniture was fine furniture. As the Supreme Court observed, the trial court determined that it was unable to find any substantial record evidence to support the board's determination that the plaintiffs were not selling "fine furniture." R R Pool Patio, Inc. v.Zoning Board of Appeals, supra, 257 Conn. 473. "[I]n the absence of a definition of fine furniture or some other evidence demonstrating that CT Page 9975 the furniture the plaintiffs proposed to sell was not fine furniture, the board had no reasonable basis upon which to conclude that the plaintiffs' application did not comport with the variance." Id., 473.
In the present appeal, the board never stated that they sustained the planning director's decision because the plaintiffs' furniture was not the kind of furniture the Amatulli variance allowed. (ROR, Item 1, pp. 4-7.) Therefore, interpretation of whether the plaintiffs' furniture is the type allowed by the variance is unnecessary.
The board did, however, state that an outdoor display did not comport with the variance. (ROR, Item 1, pp. 4-7.) The plaintiffs contend that the language of the variance allows outdoor display from anywhere on the property. As stated previously, the variance provided: "[t]his action permits wholesale and retail sales to be conducted from the premises, unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art." (Emphasis added.) (ROR, Item FFFF, p. 1345.) Ridgefield zoning regulations § 301.0 provides: "[t]he word premises shall include a parcel or plot of land, whether occupied or unoccupied by buildings." (ROR, Item CCCC, p. 1237.) Moreover, the record reveals that the zoning enforcement officer and the town planner admitted that the definition of premises included the "lot" and "entire parcel of land." (ROR, Items CCC, p. 235; DDD, pp. 436-37.) Pursuant to the language of the variance, the plaintiffs are allowed to sell oriental rugs, fine furniture and art inside as well as outside the building.
The court finds that there is no substantial evidence in the record to conclude that the language of the Amatulli variance did not include outdoor display. Accordingly, the plaintiffs' appeal is sustained on this ground.
D. Whether the type of furniture sold and the outdoor display areregulated uses which require site plan approval, whether the zoning boardof appeal's decision was arbitrary, unreasonable, and illegal because thesite plan application was not required, authorized, or admissible andwhether the site plan was denied for vague, general and discretionaryconsiderations.
The plaintiffs assert that the site plan application was not necessary because there was no change between Amatulli's use and the plaintiffs' proposed use of the property. They also contend that the type of furniture sold and outdoor display are not regulated uses that require site plan approval. The board argues that the plaintiffs' proposed use of the property requires a site plan application because it is a change of use CT Page 9976 under Ridgefield zoning regulations § 324.0.
Whether the plaintiffs' furniture is regulated is not an issue in this appeal. As previously stated, the board's decision did not state that it sustained the planning director's denial based on the type of furniture that the plaintiffs proposed to sell. (ROR, Item 1, pp. 1-7.) Accordingly, it is not necessary that the court address whether the type of furniture sold by the plaintiffs is regulated. The issue of whether outdoor display is regulated, however, is an issue in this appeal. (ROR, Item 1, pp. 1-7.)
General Statutes § 8-3 (g) provides: "[t]he zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations." "The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference." CRRA v. Planning ZoningCommission, 46 Conn. App. 566, 570, 700 A.2d 67 (1997). "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations." General Statutes § 8-3 (g).
The record reveals that there is no regulation governing outdoor display. Both the planning director and the zoning enforcement officer stated that there is no regulation governing outdoor display in a commercial zone. (ROR, Items CCC, pp. 216-19, 221, 223, 225; EEE, pp. 468, 476-77, 572, 603, 605.) The planning director further testified that it has been "tradition" in Ridgefield not to allow outdoor displays in a B-2 zone. (ROR, Item EEE, pp. 512-13, 660.)
The board, however, contends that a site plan application is necessary because outdoor display is a change of use, regulated by Ridgefield zoning regulations § 324.0. Ridgefield zoning regulations § 324.0 provides in pertinent part: "All applications for . . . change of uses . . . shall require a permit under this section." (ROR, Item CCCC, p. 1237.) Use is "[a]ny activity, occupation, business, or operation carried on, in a building or other structure or on a tract of land." Ridgefield zoning regulations § 301.0. The record reveals that outdoor display is not a separate use" under § 301.0 because it is not the "activity, occupation, business, or operation carried on in the plaintiffs' building or other structure or on a tract of land." (ROR, Item CCC, pp. 357-58.) It is only part of the retail use of the property. (ROR, Item CCC, pp. 357-58.) This is established in the record when Mr. Beecher, the attorney for the planning director, stated at the April 26, 1999 meeting that outdoor display is part of the CT Page 9977 plaintiffs' retail use of the property. (ROR, Item CCC, pp. 357-58.)
The board also contends that there was a change in use because the plaintiffs sought unlimited retail sales instead of the limited retail sales granted in the Amatulli variance. (ROR, Item 1, pp. 4-6.) There is no evidence in the record to reflect that this was the plaintiffs' intention. The site plan application does not state that the plaintiffs are seeking unlimited retail sales from the property. (ROR, Item SSS, pp. 867-70.) The plaintiffs' attorney repeatedly stated during the hearing that the plaintiffs understood the conditions of the variance and were only looking to obtain the wholesale and limited retail sales that were allowed by the variance. (ROR, Items CCC, pp. 240, 277; FFF, p. 742.)
Outdoor display, by itself, is not regulated. It is not a "use" under Ridgefield zoning regulations § 301.0, and, therefore, the plaintiffs were not required to file a site plan application just for outdoor display.
The court finds that there is no change between Amatulli's limited retail use and the plaintiffs' proposed limited retail use of the property. Accordingly, the plaintiffs were not required to file a new site plan application because there is no change of use under Ridgefield zoning regulations § 324.0. Therefore, the plaintiffs' appeal is sustained on this ground.
E. Whether the ZBA's decision was unreasonable, arbitrary. and illegalbecause the plaintiffs were denied due process.
The plaintiffs argue that they were denied due process because the defendant restricted the scope of the June 14, 1999 meeting and practiced selective administration because other properties have outdoor displays without having any site plan approval. The board argues that a review of the record reveals that the plaintiffs were not denied due process and that it extended latitude and courtesy to the plaintiffs.
First, the plaintiffs argue that they were denied due process because they were not permitted to produce rebuttal evidence, including documents from a property that had an outdoor display. Chairman Creamer denied this request because the evidence was repetitive, as the plaintiff had already presented similar evidence. (ROR, Item FFF, pp. 716-19.) "While interested persons must be allowed the opportunity to present relevant evidence to make a record for appeal and to outline their position, there is no right to filibuster on an application, and the agency chairman has reasonable discretion in cutting off a speaker who gets repetitive and talks about irrelevant matters." R. Fuller, supra, § 20.4, p. 418. "The rebuttal presentation should not be a re-hash of the entire application, but should CT Page 9978 only be limited to a summary and a few important points, trying to satisfy the agency that there are no real problems with the application." Id., § 20.10, p. 430. It is found that no due process violation occurred.
The plaintiffs also contend that the board practiced selective administration because sixty other properties in Ridgefield are allowed to have outdoor displays without any site plan approval and that Amatulli was allowed to have outdoor display. The record reflects that with the exception of the Amatulli property, all of these properties are in a different zone than the property in question. (ROR, Items CCC, pp. 212-13, 327-33; EEE, pp. 613-15.) There is no evidence that any of the properties are located in a B-2 zone. In addition, there is evidence in the record that Amatulli had an outdoor display throughout the time that he occupied the property. (ROR, Item KKK (r), pp. 801-03.) There is no evidence, however, that the board had knowledge of the outdoor display or permitted Amatulli to have it.
The court finds that the plaintiffs were not denied due process. Accordingly, the plaintiffs' appeal cannot be sustained on this ground.
F. Whether the plaintiffs' due process was violated because ofpredetermination, predisposition and bias by the chairman of the board
The plaintiffs assert that the chairman, Creamer, adjudged the case in advance of the hearing because he made a statement at a prior public hearing concerning the use of the property for outdoor display, made insulting remarks, advised witnesses and did not allow the plaintiffs to rebut the evidence presented against them.
"Neutrality and impartiality of members are essential to the fair and proper operation of a planning and zoning commission." Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, 553-54, 552 A.2d 796
(1989). "The burden of proving predetermination [is] on the plaintiffs."Schwartz v. Hamden, 168 Conn. 8, 17, 357 A.2d 488 (1975). "There is a presumption . . . that administrative board members acting in an adjudicative capacity are not biased. To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a high probability of such bias too high to be constitutionally tolerable." (Citations omitted; Internal quotation marks omitted.) O GIndustries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 429,655 A.2d 1121 (1995). "The decisive question, therefore, [is] whether [the board members] actually had made up their minds prior to the public hearing. . . ." Cioffoletti v. Planning Zoning Commission, supra,209 Conn. 555. CT Page 9979
The record reveals that statements made at the 1993 site plan application hearing establish that Creamer had an opinion as to how the property would be affected if the site plan approval was granted. "The law does not require that members of [land use] commissions must have no opinion concerning the proper development of their communities." Furtneyv. Zoning Commission, 159 Conn. 585, 594, 271 A.2d 319 (1970). The statements Creamer made compared a property in Danbury to the plaintiffs' property in Ridgefield. (ROR, Item KKK(u), pp. 812-13.) The Danbury property owner eliminated all parking in order to have an outdoor display and Creamer thought it would be "a disaster to put something like that at [this] intersection." (ROR, Item KKK (u), pp. 812-13.) In the present appeal, the plaintiffs do not request the same things that the Danbury property owner requested. The plaintiffs only seek outdoor display on limited areas of their property. (ROR, Item SSS, pp. 867-74.) They do not seek to eliminate all parking. (ROR, Item SSS, pp. 867-74.) The record reveals no evidence that Creamer adjudged the unique facts of this case prior to hearing them.
The plaintiffs also assert that Creamer's demeanor at the hearing proves his bias, disposition and prejudice. The record reveals that although the hearings were heated from time to time, Creamer allowed the plaintiffs sufficient time to present their arguments and offer rebuttal evidence. (ROR, Items CCC, pp. 160-361; DDD, pp. 362-465; EEE, pp. 466-677; FFF, pp. 678-748.) Moreover, he continued the meeting on several occasions so that all the evidence could be presented. (ROR, Items CCC, pp. 160-361; DDD, pp. 362-465; EEE, pp. 466-677; FFF, pp. 678-748.) lie even decided to keep the hearing open after all the evidence had been presented, so that the board could have time to review the documentation and ask appropriate questions at a special meeting. (ROR, Item EEE, pp. 675-77.)
The court finds that there is no evidence that chairman Creamer adjudged the facts of this case prior to hearing them. Accordingly, the plaintiffs' appeal cannot be sustained on this ground.
Having found that the plaintiff's appeal should be sustained for the reasons set forth in Paragraphs C and D herein above, the court hereby reverses the decision of the defendant Zoning Board of Appeals of the Town of Ridgefield and directs said board to sustain the plaintiff's application.
By the Court,
Joseph W. Doherty, Judge CT Page 9980